**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANIEL ADELMAN, et al., ) | CIVIL DIVISION |
|       Plaintiffs, ) | |
|       v. ) | No. 2:18-cv-00607 |
| POLICE OFFICER ANDREW JACOBS, et al., ) ) | |
| ) | Judge Nora Barry Fischer |
|       Defendants. ) | |

**DEFENDANTS SUPPLIMENTAL BRIEF ADDRESSING**
***ESTATE OF ROMAN V. CITY OF NEWARK*, --- F.3d---, APPEAL NO. 17-2032, 2019 Wl 248658 (3d CIR. JAN. 29, 2019).**

## I. Background

On April 17, 2018, Plaintiffs filed a Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania. Defendant Officers, Chief Schubert, and the City of Pittsburgh removed the case to the United States District Court for the Western District of Pennsylvania on May 7, 2018. ECF No. 1. On June 28, 2018, Defendants Jacobs, Modena, Markus, Palivoda, Chief Scott Schubert and the City of Pittsburgh filed a Motion to Dismiss Pursuant to FRCP 12(b)(6). On May 7, 2018, Plaintiffs filed a First Amended Complaint adding only two paragraphs as the amendment ECF No. 24, ¶¶ 115, 116. Defendants filed a Partial Motion to Dismiss on August 31, 2018. ECF No. 31. Defendant Andrew Jacobs filed Answer and Affirmative Defenses to Plaintiffs' counts one and three on August 30, 2018. ECF No. 30.On October 16, 2018, parties participated in Oral Argument in front of this Court where Count I, Battery, involving Defendant Chief Scott Schubert and all charges at Count V were dismissed pursuant to Plaintiffs stated intent. ECF No. 44. Following supplemental briefs on the argument, and a recent third circuit case addressing many of the issues in the instant case this Honorable Court asked for additional briefing on the matter. ECF No 47.

## II. Facts

Many of the claims in the instant case and the claims in *Roman* are very similar, however, many of the most important underlying facts are very different. For example in *Roman*, the plaintiff spent a number of months in jail despite a court ruling that the search in the criminal case violated his fourth amendment rights. In the case before this Court plaintiff was arrested via warrant because he was unable to give an address allowing him to be arrested via summons, and he was arrested and incarcerated after approval by a district attorney. ECF No. 34-4 at 7. Additionally, the Third Circuit gave significant weight to the fact that the municipality in *Roman* was under investigation for ongoing civil rights violations at the time of the case and shortly after the municipality began operating under a consent decree. At the time of the instant case the City of Pittsburgh was not under investigation for civil rights violations, nor was the City operating under a consent decree. One major inference drawn in *Roman* was that the City knew of a widespread pattern of constitutional violations because of the investigation and the Consent decree. In the instant case the City of Pittsburgh is working under an opposite factual scenario. As Plaintiffs' Amended Complaint points out, in 1997 the City of Pittsburgh Bureau of Police was operating under a Consent Decree to fix a number of issues  ECF No. 24, ¶ 20. As a result of improvements the Consent Decree was lifted in 2000 and 2001. ECF No. 24, ¶ 22. While much of the case law established in *Roman* is precedential in the instant case, many of the facts clearly distinguish the two cases. Ultimately, *Roman* reinforces the long standing principal that claims of municipal liability be held to a high standard.

### III.   Argument

1. **Policy, Custom and failure to train are different theories of municipal liability that cannot simultaneously exist. Plaintiffs did not sufficiently plead municipal liability claim against the City of Pittsburgh under any theory of liability.**

The pleading requirements for municipal liability claims based on a policy or custom are similar. To properly allege municipal liability under an allegedly unconstitutional custom or policy

a plaintiff must first allege "a local government's policy or custom … inflicted the injury in question." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)(quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, (9178)). Policy is created "when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Roman*, 914 F.3d at 798 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1980)). To allege that a constitutional injury allegedly resulted from an alleged custom, a plaintiff must allege that "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Roman*, 914 F.3d at 798 (quoting *Bielevicz v. Dubinon*, 915 F. 845, 850 (3d cir. 1990)). To plead either theory of liability a plaintiff must allege enough facts to create an inference of at least one more thing: that the policy or custom was the "proximate cause" of his injuries. *Roman*, 914 F.3d at 798. Proximate cause is alleged by pleading enough facts to "demonstrate[e] an 'affirmative link'" between the alleged policy or custom and the particular constitutional violation alleged. *Id*. *Roman* also outlines how a failure-to-train claim is different and what the requirements are to allege such a claim. To allege a failure-to-train claim a complaint does not need to allege an unconstitutional policy, instead, a complaint must allege that "a city's failure to train its employees 'reflects a deliberate or conscious choice.'" *Id*, (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). A plaintiff sufficiently pleads deliberate indifference by showing that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Roman*, 914 F.3d at 798, *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011).

In the Third Circuit's analysis of the plaintiff's claims in *Roman* the Court considered multiple documents and factual allegations. First, the Court considered multiple documents outside of the complaint, including "a press release issued by the U.S. Attorney's Office (the 'press release'), and a consent decree between the United States and the City of Newark (the 'consent decree')." *Roman*, 914 F.3d 796. In the analysis the Third Circuit found that Adriano Roman did not allege a policy causing his injuries, but did allege a custom. *Id*. Adriano Roman successfully alleged "a pattern or practice of constitutional violations in areas including ... arrest practices" by alleging that officers conducted improper searches and false arrests" and because Adriano Roman produced a consent decree that "cover[ed] the same type of conduct" he was alleging his claims. *Roman*, 914 F.3d at 799. Furthermore, the Third Circuit explained that they could "fairly infer that the problems that led to [the consent decree] were occurring during the time of his allegations and for some time before [the consent decree]." *Id*. The Third Circuit found that Plaintiff successfully alleged failure-to-train claims because his failure to train allegations were supported by allegations that the City of Newark "'refus[ed]' to create a well-run Internal Affairs Department, and 'inadequately investigat[ed], if investigating at all, citizens' complaints regarding illegal search and seizure'" *Roman*, 914 F.3d at 800-01. Plaintiff Roman further alleged that the municipalities failures resulted in a "'complete lack of accountability' and of 'record keeping,' leading to a culture in which officers 'knew there would be no professional consequences for their action[s].'" *Id*. Finally, the Third Circuit also relied on the consent decree which touched on all the issues in Plaintiff Romans allegations.

Based on the delineations between the theories and pleading requirements set forth in *Roman* Plaintiffs' First Amended Complaint becomes weaker because their allegations of municipal liability rely on resuscitations of the elements of liability mixed together and are

unsupported by factual allegations like the supporting facts in *Roman* were supported. Plaintiffs' First Amended Complaint alleges two separate counts of municipal liability, first Plaintiff alleges municipal liability pursuant to § 1983 based upon alleged violations of Plaintiff Daniel Adelman's fourth and fourteenth amendment rights. ECF No. 24 at 32, ¶184. Next Plaintiffs allege municipal liability based on a "POLICY/CUSTOM OF TOLERANCE OF EXCESSIVE FORCE." ECF No. 24 at 33. Here, at count IV, the First Amended Complaint makes convoluted legal conclusions based on every form of municipal liability stating the elements of each in a list of paragraphs unsupported by actual fact. ECF No. 24, ¶¶190 (a)-(z). Plaintiffs' list of legal conclusions under count IV include claims that "the practices, customs and/or policies of all City of Pittsburgh and Police Defendants consisted of . . . deliberate indifference to the Constitutional rights of the citizens of the City of Pittsburgh," along with numerous complaints about a failure-to-train and supervise. *Id.* Count IV of Plaintiffs' First Amended Complaint goes on to allege improper protocols with respect to "this chase/pursuit" despite the fact that the First Amended Complaint clearly establishes that Daniel Adelman physically interfered with an arrest, rather than officers identifying and then chasing him. ECF No. 24,¶¶ 93-106. Here, Plaintiffs fail to make out even the most basic threadbare allegations reciting the elements of municipal lability pursuant to a clear theory. Furthermore, even if Plaintiffs' theory of municipal liability could be deciphered, the First Amended Complaint fails to allege facts that create an affirmative link between the alleged policy or custom and Plaintiff Daniel Adelman's alleged constitutional violations and, thus, his claim against the City should be dismissed.

    Plaintiffs allege that the City has an unconstitutional use of force policy but then cites multiple intertwining policies to support this legal conclusion. ECF No. 24, ¶¶ 190 (x)(y)(z). However, Plaintiffs factual allegations about the City's use of force policy are wrong. ECF No. 24, ¶¶ 34-39.

Plaintiffs' claim that the "linear design showing five levels of response to counter six levels of resistance" evidences the City's unconstitutional policy, and that the City's policy allows for "deadly force (5) be used against Defensive Resistance (4)." ECF No. 24, ¶ 39. These claims are untrue and not based in reality as evidenced by the actual continuum of force policy. ECF No. 32-3. The City does not have a linear policy and the City's policy does not allow for deadly force to be used in response to what Plaintiffs define as "Defensive Resistance[1]." ECF No. 24, ¶ 40. Plaintiffs do not allege a particular policy that serves as the proximate cause of Plaintiff Daniel Adelman's alleged constitutional injuries because they fail to allege any policy that caused him to physically obstruct another person's arrest and, thus, Plaintiffs' claims of an unconstitutional policy resulting in municipal liability should be dismissed.

Next, it is completely unclear what municipal "custom" Plaintiffs allege caused their alleged injuries. For example Plaintiffs' allege the City had custom of a policy (ECF No.24, ¶ 190(z)), a custom relating to batons despite no allegation that officers carry batons or used them in this incident (ECF No.24, ¶ 190(m)), that non-uniformed officers had a custom of not identifying themselves (ECF No.24, ¶ 190(k)) despite alleging that "uniformed officers yelled 'police freeze'" during the incident (ECF No.24, ¶ 98), and, finally, that there was a policy "in allowing and condoning their officers' actions in arresting individuals in order to intimidate and coerce citizens who have fled from the police then surrendered," despite alleging the opposite of a factual scenario involving fleeing (ECF No.24, ¶ 190(r)). The First Amended Complaint fails to plead an alleged custom that served as the proximate cause of Plaintiff Daniel Adelman's injuries because they

---

[1] Plaintiffs allege "It must be noted that Defensive Resistance is defined as: 'affirmative actions, which attempt to prevent an officer's control but never attempts to harm the officer [emphasis added]. Use of dead weight, grasping of objects, moving away from the officer[.]'" ECF No. 24, ¶ 40.

failed to allege a custom that caused Plaintiff Daniel Adelman to physically obstruct an arrest, caused him to grab and shove a police officer and continue to "grab his wrist" even after the officer was identified. ECF No. 24, ¶¶ 99-103. Plaintiffs' claims that the City had an unconstitutional custom should be dismissed because he failed to allege an affirmative link between his alleged injuries and an alleged custom of the City of Pittsburgh.

Finally, with respect to Plaintiffs failure-to-train claims, once again, the First Amended Complaint fails to connect the factual allegations with any real fact raising an inference of a failure-to-train. In *Roman,* Adriano Roman's failure-to-train claims survived because he made specific factual allegations, like the City of Newark demonstrated "failure to discipline officers" and that the City of Newark was "refusing to create a well-run internal Affairs Department," and then supported those legal conclusions with facts. *Roman*, 914 F.3d at 800. Adriano Roman supported his claims by alleging facts indicating that "certain police officers did not receive training for over 20 years," and then he fortified those allegations with a consent decree on the same facts. The instant Plaintiff's claims are unclear as to what training was allegedly lacking and doesn't support or fortify those conclusions with any real facts. Plaintiffs' failure-to-train claims of municipal liability should be dismissed because he alleges no real facts to support the claims.

2. **The materials provided to the Third Circuit in *Roman* demonstrate how high the requirements are to allege municipal labiality.**

In *Roman* included with Adriano Roman's claims were multiple supporting documents including, "an article published in the Newark *Star Ledger* (the '*Star Ledger* article'), a press release issued by the U.S. Attorney's Office (the 'press release'), and a consent decree between the United States and the City of Newark (the 'consent decree')." *Roman*, 914 F.3d 796[2]. Plaintiffs'

---

[2] The Third Circuit declined to consider the Department of Justice's Report on the investigation of the Newark Police Department because it was not provided to the District Court in the first instance

7

First Amended Complaint does not contain any similar items. In fact, some facts alleged by the First Amended Complaint create an inference opposite of the one the Third Circuit made with regard to the consent decree. In *Roman* the Third Circuit relied heavily on the fact that the consent decree that the City of Newark was operating under concerned the very constitutional issues that Adriano Roman alleged in his Complaint. *Roman*, 914 F.3d at 799. The Third Circuit stated that the consent decree was especially important in *Roman* because it provided "essential context" to Adriano Roman's claims. *Id*, at 797. In the instant case Plaintiffs' allege that the City of Pittsburgh entered into a consent decree in 1997, and that the same consent decree was "lifted from the Police Bureau in 2001, and from the Office of Municipal Investigation in 2002." ECF No. 24, ¶¶ 21-22. The lifting of the consent decree is significant because the timing of the alleged violation compared to the status of a consent decree was important to the Third Circuit in *Roman*. The Third Circuit explained that because the City of Newark was under an investigation that led to a consent decree regarding the same issues in Adriano Roman's complaint that his claims were "fortified" by the reasonable inference that the investigation indicated ongoing constitutional violations known to the City of Newark. Here, the City of Pittsburgh was under a consent decree and that was lifted. It can be inferred that the consent decree was lifted because the issues calling need for the consent decree were solved. This inference indicates that the City of Pittsburgh would be reasonable in assuming that there were *not* ongoing violations of citizen's constitutional rights after the consent decree was lifted. The instant claims come after the City of Pittsburgh's consent decree was lifted. The fact that the instant Plaintiffs plead facts raising an inference that there was no pattern of

---

by any party. Nor is it apparent that the Court considered it *sua sponte*. *Estate of Roman v. City of Newark*, 914 F.3d 789, 797 (3d Cir. 2019).

constitutional violations that the City knew or should have known of indicates that Plaintiffs' claims against the City should be dismissed with prejudice.

3. **Plaintiffs' state law claims of Malicious Prosecution, Abuse of Process, Loss of Consortium, False Arrest and False Imprisonment and any Assault and Battery claims against the City or Police Supervisors who were not present for the alleged incident should be dismissed because The City of Pittsburgh is immune for any potential state law tort claims.**

In *Roman* the Third Circuit upheld the dismissal of Adriano Roman's false imprisonment and false arrest claims because his complaint did not comply with the "New Jersey Tort Claims Act's procedural requirements for bringing claims against public entities and public employees." *Roman*, 914 F.3d at 803. Here, Plaintiff's make a multitude of state law claims against the City of Pittsburgh and supervisors in the Police Bureau. While the *Roman*, state law claims were dismissed on a statute of limitations, the issue in the instant case is analogous. Under Pennsylvania's Political Subdivision Tort Claims Act, "no local agency [i.e., a municipality] shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," 42 Pa. Cons. Stat. § 8541. Here, Plaintiff has made the claims according to state law as the First Amended Complaint allegations under counts VI, VII, IX, X, and XI do not in any way appear to be brought pursuant to § 1983. Under the Pennsylvania Tort Claims Act the City and supervisors cannot be held liable for these causes of action and, thus, these charges against the City and Defendant Chief Schubert should be dismissed with Prejudice.

4. **Defendants' position that there was probable cause based on the facts alleged in Plaintiffs' First Amended Complaint requires dismissal of counts VI, VII, IX, X, XI.**

The Third Circuit discusses the principles of *res judicata*, collateral estoppel, and judicial estoppel as applied to Adriano Roman's claims. *Roman*, 914 F.3d 796. The Third Circuit's holdings on these legal principles again only add to the Defendants position in the instant case. In *Roman*, the principal of judicial estoppel is described as "the doctrine against inconsistent

9

positions" because it "prevents a litigant form asserting a position inconsistent with one that he has previously asserted in previous proceedings." *Roman*, 914 F.3d 805 (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3rd Cir.1996)). Here, while there are no allegations that Plaintiff Daniel Adelman made statements at other proceedings, his own allegations within his First Amended Complaint are made pursuant to Federal Rule of Civil Procedure 11, which requires that his "factual contentions have evidentiary support. . ." Fed. R. Civ. P. 11. Plaintiffs' First Amended Complaint alleges facts that form the basis of probable cause for Plaintiff Daniel Adelman's arrest for Obstruction/Administration of Law or Other Gov't function, 18 Pa. C.S.A. § 5101; Resisting arrest or Other Law Enforcement, 18 Pa. C.S.A. § 510; and Public Drunkenness, 18 Pa. C.S.A. § 5505. Plaintiff Daniel Adelman alleges he consumed "several beers" while at the concert where the incident occurred. ECF No. 24, ¶¶ 90. Plaintiff Daniel Adelman alleges that he "grabbed and shoved" the "larger individual," who turned out to be a police officer. ECF No. 24, ¶¶ 100. Plaintiff Daniel Adelman also alleges he continued to "grab" this individual even after he heard "Police Freeze." ECF No. 24, ¶¶ 103, 98. Plaintiff purposefully interrupted another arrest, which is, by definition, obstruction. When Plaintiff Daniel Adelman fought back "in self-defense" it was resisting arrest. While Plaintiff Daniel Adelman alleges he believed he was in a fight with, apparently, random people on the street[3], the officers involved couldn't read Plaintiff Daniel Adelman's mind. The officers could only make decisions based on Plaintiff Daniel Adelman's actions, which included drunkenly interrupting an arrest and physically fighting with an officer. Furthermore, the criminal complaint was approved by an Assistant District Attorney with no connection to the case, showing that prosecution had a proper

---

[3] A mistaken belief about whether individuals involved in an arrest are police officers does not negate existence of the intent element in a prosecution for a crime of obstruction, Plaintiff was arrested with probable cause. *United States v. Goodwin*, 440 F.2d 1152, 1156 (3d Cir. 1971).

10

purpose. ECF No. 32-4. Plaintiff cannot allege facts demonstrating probable cause and then take a legal position that argues that those allegations should be ignored to allow his civil claims to move forward. Plaintiff is alleging inconsistent positions within the same legal "proceeding," his First Amended Complaint, and, thus, his claims of Malicious Prosecution, Abuse of Process, False Arrest, and False Imprisonment against all Officer Defendants and the City of Pittsburgh should be dismissed with prejudice.

## IV. Conclusion

For the foregoing reasons and for the reasons stated in their Motion, the City of Pittsburgh, Officers Andrew Jacobs, Todd Modena, Brian Markus, Robert Palivoda, and Chief Scott Schubert request that this court dismiss all claims.

> Respectfully Submitted,
> s/ Julie E. Koren
>     Assistant City Solicitor
> 313 City- County Building,
> 414 Grant St.
> Pittsburgh, PA 15219
> Julie.Koren@pittsburghpa.gov
> *Counsel for Defendants, Jacobs, Modena, Markus, Palivoda, Chief Schubert and the City of Pittsburgh*