## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL ADELMAN and JENNIFER ADELMAN, his wife,

      Plaintiff,

      v.

POLICE OFFICER ANDREW JACOBS, Individually and in his official capacities as a police officer of the City of Pittsburgh; POLICE OFFICER TODD MODENA, individually and in his official capacities as a police officer of the City of Pittsburgh; POLICE OFFICER BRIAN MARKUS, individually and in his official capacities as a police officer of the City of Pittsburgh; POLICE OFFICER ROBERT PALIVODA, Individually and in his official capacities as a police officer of the City of Pittsburgh; CITY OF PITTSBURGH, a municipal Corporation; CHIEF SCOTT SCHUBERT, Individually and in his official capacities as the Chief of Police of the City of Pittsburgh; and ARAMARK SPORTS & ENTERTAINMENT SERVICES, LLC,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO. 18-607
JUDGE NORA BARRY FISCHER

## MEMORANDUM OPINION

### I.    INTRODUCTION

This is a civil rights case wherein Plaintiffs Daniel and Jennifer Adelman ("Plaintiffs"), husband and wife, seek damages against Defendant Police Officers Andrew Jacobs, Todd Modena, Brian Markus, and Robert Palivoda; Police Chief Scott Schubert; the City of Pittsburgh; and Aramark Sports & Entertainment Services, LLC arising from a September 19, 2017 incident outside of a Roger Waters' concert at PPG Paints Arena during which police officers allegedly used excessive force to effectuate Mr. Adelman's unlawful arrest. (Docket No. 24). Presently before the Court is a partial motion to dismiss filed by Defendants City of Pittsburgh; Officers

Jacobs, Markus, Modena, and Palivoda; and Chief Schubert (collectively "Defendants") (Docket No. 31),[1] their brief in support thereof with supporting attachments (Docket No. 32), Plaintiffs' response in opposition thereto (Docket No. 34), and Defendants' reply brief (Docket No. 36).

On October 16, 2018, the Court heard oral argument from the parties. (Docket No. 45). At argument, the video of the altercation between Adelman and the police officers that had been described in Plaintiffs' Amended Complaint was shown, and the Court was provided a copy of that video for the record on April 5, 2019. (*Id.*) The video begins with Adelman already on the ground and although the video is dark, Adelman can be seen being hit, having his head hit off the ground, and being tased at least once.[2]

At argument, Plaintiffs advised the Court of their intention to withdraw Count V of the Amended Complaint and their battery claim at Count II as it related to Defendant Schubert; thus, the Court dismissed those claims with prejudice on October 18, 2018. (Docket No. 44). Thereafter, the Court ordered supplemental briefing in light of the Court of Appeals for the Third Circuit's decision in *Estate of Roman v. City of Newark*, 914 F.3d 789 (3d Cir. 2019). Plaintiffs filed their supplemental brief on February 13, 2018, (Docket No. 48), and Defendants filed their supplemental brief on February 25, 2019, after having been granted an extension of time, (Docket Nos. 50-51). The Motion is now ripe for disposition.

---

[1]    Aramark Sports & Entertainment Services, LLC filed an Answer and Affirmative Defenses to the Amended Complaint and Cross-Claim pursuant to Rule 13(g) on August 31, 2018, and, thus, does not join Defendants' motion to dismiss. (Docket No. 29). Additionally, Defendant Officer Andrew Jacobs filed an Answer and Affirmative Defenses to Counts I and III of Plaintiffs' Amended Complaint. (Docket No. 30). Officer Jacobs is a party to the motion to dismiss as to the remainder of its allegations. (*Id.*)

[2]    Consistent with the Supreme Court's mandate in *Scott v. Harris*, 550 U.S. 372 (2007), when reviewing a motion to the dismiss, to the extent that the video is referenced in and relied upon in the complaint and played in open Court as part of oral argument, the Court will view the events shown in the videotape "in the light depicted by the videotape." *See also Ickes v. Grassmeyer*, Civ. No. 3:13-208, 2016 WL 4272358, at *4 n.3 (W.D. Pa. Aug. 11, 2016), *aff'd sub nom. Ickes v. Grassmeyer*, 704 F. App'x 190 (3d Cir. 2017) (although plaintiff had testified that no one asked him to get out of the car, where this command could be heard clearly on the dash cam video of the incident, court determined, "[b]ecause no reasonable juror could conclude that Plaintiff was never asked to get out of the car, the Court will view this fact in the light depicted in the dash cam video for purposes of deciding the pending motions for summary judgment.") (citing *Scott*, 550 U.S. at 380).

## II.    FACTUAL BACKGROUND

When the Court analyzes a motion to dismiss, it construes the Complaint in the light most favorable to the plaintiff.  *See infra* Part III.  The Court now turns to a summary of the factual allegations as pled in Plaintiffs' Amended Complaint.

Before stepping outside for a cigarette, Mr. Adelman had several beers inside the concert venue.  (Docket No. 24 ¶¶ 90-91).  While outside the arena, he witnessed a physical confrontation between two individuals and decided to intervene believing the larger individual was harming the smaller one.  (*Id.* ¶¶ 93-97).  Consequently, he grabbed the larger individual from behind (Officer Andrew Jacobs who was dressed in plain clothes) and shoved him to the side.  (*Id.* ¶¶ 97, 126).

Afterwards, City of Pittsburgh police officers approached him and yelled, "Police, freeze." (*Id.* ¶ 98).  He immediately froze.  (*Id.* ¶ 99).  Officer Jacobs took him to the ground and started punching him.  (*Id.* ¶ 101).  In turn, Adelman grabbed Officer Jacobs' wrist and told him "no more punches" after which Officer Jacobs began to repeatedly slam Adelman's head on the pavement. (*Id.* ¶¶ 103-04).  An officer tasered him.  (*Id.* ¶ 105).  Then he heard someone say, "put your hands behind your back" and that is when Officer Jacobs identified himself as a police officer.  (*Id.* ¶ 106).  Throughout this altercation, no police officer intervened to help him.  (*Id.* ¶ 102).

Mr. Adelman was ultimately charged with Obstruction Administration of Law/ Other Government Function, 18 Pa. Con. Stat. Ann. § 5101; Resisting Arrest/ Other Law Enforcement, 18 Pa. Con. Stat. Ann. § 5104; and Public Drunkenness and Similar Misconduct, 18 Pa. Con. Stat. Ann. § 5505.  (*Id.* ¶ 141).  On November 21, 2017, all of the criminal charges against him were dropped or withdrawn.  (*Id.* ¶ 142).

III.    LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  To survive a Rule 12(b)(6) challenge, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Although the Court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Instead, the plaintiff must plead facts which permit the court to make a reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556-57.

Consistent with these principles, the Third Circuit Court of Appeals has prescribed a three-step analysis for purposes of determining whether a claim is plausible.  First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).  Second, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions

can provide the framework of a complaint, they must be supported by factual allegations"). Third, the [c]ourt should assume the veracity of all well-pled factual allegations and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). This third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679).[3]

IV.     DISCUSSION

Defendants move to dismiss Counts I-VII and IX-X. (Docket Nos. 31-32). Defendants contend that they are entitled to qualified immunity for Plaintiffs' § 1983 claims and immunity for Plaintiffs' state law claims. (*Id.*) Defendants likewise argue that Plaintiffs have failed to plead a prima facie case as to any of their claims. (*Id.*) Plaintiffs counter that Defendants are not entitled to immunity and they have stated plausible claims for relief at each count. (Docket No. 34). Having carefully considered the parties' arguments, the Court grants Defendants' motion, in part, and denies it, in part. The Court now sets forth its rationale, starting with the § 1983 claim.

Section 1983 serves as a means of vindicating violations of federal constitutional and statutory rights and provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

---

[3]     The Court notes that in ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). An exception to this general rule is "undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "items subject to judicial notice," without converting the motion to dismiss into one for summary judgment. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quotation omitted). Because the videotape in question was referenced in the Plaintiffs' Amended Complaint and presented at oral argument and neither party disputes the authenticity of the video, it may properly be considered by this Court. *See also* note 2.

42 U.S.C. § 1983; *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). A plaintiff cannot obtain redress under § 1983 without establishing an underlying violation of a federal constitutional or statutory right. *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 119-20 (2005). Here, Plaintiffs contend that Mr. Adelman's Fourth Amendment right to be free from excessive force made applicable by the Fourteenth Amendment was violated. (Docket No. 24 ¶¶ 181-85).

To prevail on the excessive force claim, Plaintiffs must plead that Mr. Adelman was subject to a seizure under the Fourth Amendment and that such seizure was unreasonable. *Cty. of Los Angeles, Calif. v. Mendez*, 137 S.Ct. 1539, 1546 (2017). The amount of force during an arrest must be "objectively reasonable", which is determined by looking at "[t]he severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Rivera v. Como*, 733 F. App'x 587, 590 (3d Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).[4] Plaintiffs pled that Mr. Adelman immediately froze after the police ordered him to freeze but nevertheless was taken to the ground, punched repeatedly, had his head slammed off the ground, and was tasered before being placed in handcuffs. (Docket No. 24 ¶¶ 99-105). In this Court's estimation, these facts are sufficient for Plaintiffs' excessive force claim to survive a motion to dismiss. *Gulley v. Elizabeth City Police Dept.*, 340 F. App'x 108, 110 (3d Cir. 2009) (explaining "beating a suspect on the face and head, who is lying down and not resisting arrest, would constitute excessive force in violation of the Fourth Amendment").

---

[4]    The Third Circuit also addresses: "1) whether the suspect is 'violent or dangerous', 2) the 'duration' of the force, 3) whether the force was used to make an arrest, 4) the 'possibility' that the suspect is armed, and 5) the number of people with whom the police must contend." *Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013) (citing *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

Additionally, police officers may be liable for excessive force even where they did not personally use excessive force or direct others to use it. *Adams v. Springmeyer*, Civ. Act. No. 11-790, 2012 WL 1865736, at \*12 (W.D. Pa. 2012); *see Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011); *Ekwunife v. City of Phila.*, 756 F. App'x 165, 170 (3d Cir. 2018). At the hearing on the motion to dismiss, Defendants declined to identify who each of the officers were in the video. (Docket Nos. 32; 45 at 12). Only through discovery can Plaintiffs learn each officers' role. Once discovery has concluded, Defendants can renew their arguments, if appropriate, at the summary judgment stage.[5] Hence, Defendants' motion to dismiss as to Count III is denied.

Turning now to the defense of qualified immunity, Defendants' argument for same fails at this stage. To resolve questions of qualified immunity, "courts engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018) (citing *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016)). While the Court is mindful that the issue of qualified immunity should be resolved as early as possible, *Mann v. Palmerton Area School District*, 33 F. Supp. 3d 530, 542 (M.D. Pa. 2014), given Plaintiffs' averments and the Court's ruling above, application of the doctrine of qualified immunity would be premature in this case. Of course, Defendants are free to renew this defense at a later stage. Yet, this Court points out that reasonableness of the use of force is often one for a

---

[5]     A review of the Amended Complaint reveals nothing to suggest that Mrs. Adelman's civil rights have been violated. Although she was inside PPG Paints Arena at the time of the events in question. (Docket No. 24), she asserts a civil rights claim for money spent on her husband's medical expenses and for being deprived of the services, comfort, society, assistance and companionship of her husband. (*Id.* ¶¶ 212-14). While the Court of Appeals for the Third Circuit has not yet spoken on this issue, the clear trend is that loss of consortium is not an available remedy in a § 1983 claim. *See Campbell v. Balon*, Civ. Act. No. 4:16-CV-00779, 2017 WL 2880856, at \*12 (M.D. Pa. July 6, 2017); *Wheeler v. City of Jersey City*, Civ Act. No. 12-7528, 2016 WL 1029271, at \*4 (D.N.J. Mar. 14, 2016); *Reihner v. Washington Cty, Pa.*, Civ. Act. No. 15-143, 2015 WL 6737972 (W.D. Pa. Nov. 4, 2015). Accordingly, Mrs. Adelman's loss of consortium claim is dismissed to the extent it is premised on § 1983.

jury. *Sarrano v. City of Scranton*, Civ. Act. No. 3:17-2398, 2019 WL 450573, at \*6 (M.D. Pa. Feb. 5, 2019) (citing *Williams v. Papi*, 30 F. Supp. 3d 306, 312 (M.D. Pa. 2014)).

With respect to Plaintiffs' *Monell* claim,[6] Plaintiffs have sufficiently pled a failure to train claim. A plaintiff can plead a *Monell* claim two different ways: (1) by alleging a city policy or custom was the "proximate cause" of his injuries; or (2) by alleging a failure to train by demonstrating that the officers were deliberately indifferent to the rights of the persons with whom they came into contact. *Estate of Roman*, 914 F.3d at 798. Deliberate indifference can be pled by "showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011)) (internal quotation marks omitted).

In this Court's estimation, Plaintiffs' allegations regarding the City of Pittsburgh's failure to train, supervise and discipline are also sufficient to survive a motion to dismiss.[7] To this end, Plaintiffs allege: failing to properly train officers so that excessive force would not be applied when arresting individuals; failing to educate officers on procedures for effectuating arrest; failing to train officers to identify themselves as police officers (especially when wearing plain clothes);[8]

---

[6]     *Monell. v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978).
[7]     The Court considers allegations of failure to train, supervise, and discipline together because they fall under the same standard of municipal liability. *See Estate of Roman*, 914 F.3d at 799 n.7.
[8]     This Court's research did not locate any Third Circuit cases relating to the use of excessive force by plainclothes police officers. However, the Courts of Appeals for the Seventh and Sixth Circuit have addressed this issue. In *Doornbos v. City of Chicago*, 868 F.3d 572 (7th Cir. 2017), the Seventh Circuit explained that "absent reasonable grounds to think that identification would present an unusual danger, [like the suspect being armed and dangerous] it is generally not a reasonable tactic for plainclothes officers to fail to identify themselves when conducting a stop." *Id.* at 584. On the other hand, in *Naselroad v. Mabry*, —— F. App'x——, 2019 WL 626463 (6th Cir. 2019), the Sixth Circuit declined to address the issue of whether plainclothes officers needed to identify themselves prior to shooting; instead, finding that the officers were not entitled to qualified immunity because Naselroad did not pose a threat to shoot. *Id.* at \*7.

failing to train officers in the handling of intoxicated individuals; in condoning excessive force actions; [9] and covering up police misconduct. (Docket No. 24 ¶¶ 60, 156, 190). Here, it is reasonable to assume policymakers would know that officers could confront inebriated individuals on patrol, especially outside of a concert venue where alcohol is being served and bars are nearby. Thus, Plaintiffs have sufficiently pled a *Monell* claim, and Defendants' motion to dismiss Count IV is denied.

Turning to Plaintiffs' Pennsylvania state law claims at Counts VI, X, and XI, it is this Court's opinion that Plaintiffs cannot maintain claims for malicious prosecution, false arrest, and false imprisonment because the police had probable cause to arrest Adelman. "Probable cause exists when 'the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Karns v. Shanahan*, 879 F.3d 504, 523 (3d Cir. 2018) (quoting *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990)). As noted, he was arrested and charged with obstructing the administration of law or other government function, resisting arrest or other law enforcement, and public drunkenness and similar misconduct. (Docket No. 24 ¶ 141).

> A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa. Con. Stat. Ann. § 5101. The absence of probable cause is an essential element of false arrest, false imprisonment, and malicious prosecution claims, and such claims cannot proceed if probable cause existed. *Young v. City of Pittsburgh*, —— F. App'x ——, 2014 WL 1328005, at *5

---

[9] In fact, Plaintiffs reference ten cases where excessive force claims were brought against City of Pittsburgh officers. (Docket No. 24 ¶ 61).

(3d Cir. Apr. 4, 2014) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)); *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999) (citing Pennsylvania cases), *aff'd*, 202 F.3d 254 (3d Cir. 1999). Per the Amended Complaint, Mr. Adelman injected himself into the arrest of David Jones by grabbing the plain clothes officer from behind and shoving him away. (Docket No. 24 ¶¶ 95-97; 124-26). Those facts are sufficient for a reasonable officer to believe that Mr. Adelman committed the crime of obstruction, which would provide the officers with probable cause to charge and arrest him. Therefore, Plaintiffs' claims for false arrest, false imprisonment, and malicious prosecution are without merit; Defendants' Motion as to Counts VI, X, XI of Plaintiffs' Amended Complaint is granted.[10]

Relatedly, Plaintiffs have not sufficiently pled a claim for abuse of process. A Pennsylvania abuse of process claim has three elements: "(1) an abuse or perversion of process already initiated[,] (2) with some unlawful or ulterior purpose, and (3) harm to the plaintiff as a result." *Turkos v. Dupont Borough*, 721 F. App'x 208, 214 (3d Cir. 2018) (internal citation and quotation omitted). An abuse of process claim "is concerned with a perversion of process *after* it is issued." *Id.* (quoting *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987)). "[T]here is no cause of action for abuse of process if the [government officer], even with bad intentions, merely carries out the process to its authorized conclusion." *Id.* at 215 (quoting *Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F. Supp. 19, 21 (E.D. Pa. 1992)). Plaintiffs' allegations relate to Defendants' decision to file charges against Mr. Adelman and not to any improper actions taken by Defendants after charges were filed. (Docket No. 24 ¶¶ 202-04). Furthermore, on November 21, 2017, all of the criminal charges against Mr. Adelman were dropped or withdrawn. (*Id.* ¶ 142).

---

[10]    Additionally, under the preexisting obstruction statute, our Court of Appeals held that the fact that a plaintiff was unaware that someone was a police officer is not an absolute defense. *U.S. v. Goodwin*, 440 F.2d 1152, 1155 (3d Cir. 1971).

To the extent that Plaintiffs argue that the charges should have been withdrawn earlier

because the officers acted with a nefarious motive in filing them, as set forth above, probable cause

existed for at least one of the charges and whether Defendants continued to pursue them for the

wrong reason is irrelevant to a claim for abuse of process. (*Id.*); *see Napier v. City of New Castle*,

407 F. App'x 578, 582 (3d Cir. 2010) (internal quotation and citation omitted) (finding that the

fact that the police were aware they had the wrong person and continued to prosecute Nappier did

not give rise to an abuse of process claim because "there is no liability where the defendant has

done nothing more than carry out the process to its authorized conclusion, even though with bad

intentions"). Accordingly, Defendants' motion to dismiss Count VII is granted.

Turning to Plaintiffs' claim for battery, under Pennsylvania law, "[a] police officer may be

held liable for assault and battery when the force used in making an arrest is unnecessary or

excessive." *Minor v. Cumberland Twp.*, 258 F. Supp. 3d 518, 531-32 (W.D. Pa. 2017). As

discussed above, Plaintiffs have sufficiently pled an excessive force claim. Defendants' motion

as to Counts I and II is likewise denied.

Also, at this juncture, the City of Pittsburgh is not absolved from liability on the basis of

Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Con. Stat. Ann. § 8541.

The PSTCA provides in relevant part, "no local agency shall be liable for any damages on account

of any injury to a person or property caused by any act of the local agency or an employee thereof

or any other person." *Id.* In *Vargas v. City of Philadelphia*, 783 F.3d 962, 975 (3d Cir. 2015), the

Court of Appeals for the Third Circuit held that the "PSTCA provides immunity to municipalities

and its employees for official actions unless the employee's conduct goes beyond negligence and

constitutes 'a crime, actual fraud, actual malice, or willful misconduct.'" "Willful misconduct" is

"conduct whereby the actor desired to bring about the result that followed or at least was aware

that it was substantially certain to follow, so that such desire can be implied." *Id.* (internal quotation and citation omitted). Given that Plaintiffs have sufficiently pled the tort of battery and the underlying conduct could be deemed willful at this stage in the case, Defendants are not entitled to state immunity. *See Sarrano*, 2019 WL 450573. Rather, they can renew these defenses at the summary judgment stage or at trial.

Finally, the Court addresses whether the dismissal of Counts VI, VII, X, XI of Plaintiffs' Amended Complaint should be with prejudice or without prejudice. The United States Court of Appeals for the Third Circuit has held that in civil rights cases "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245; s*ee also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 113 (3d Cir. 2002). "Leave to amend may be denied for futility if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 841 (3d Cir. 2014) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) and *citing In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Here, the Court finds that any further amendment of these claims would be futile given the Court's analysis of the claims set forth above. In addition, Plaintiffs already filed an amended pleading in this matter and have not affirmatively sought leave to file a second amended complaint nor supplied this Court with a proposed pleading such that leave to amend may be denied on these grounds as well. *See, e.g., U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013) ("[A] 'bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought. . .—does not constitute a motion within the contemplation of Rule 15(a)'") (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994)); *McWreath v. Range Res.–Appalachia, LLC*, 645 F. App'x 190, 196 (3d Cir.

2016) ("[T]he failure to submit a draft amended complaint 'is fatal to a request for leave to amend'") (quoting *Zizic*, 728 F.3d at 243). Accordingly, the Court will dismiss Counts VI, VII, X, XI of Plaintiffs' Amended Complaint with prejudice.

V.    CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss is GRANTED, IN PART, and DENIED, IN PART.

An appropriate order follows.

*/s Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: April 17, 2019
cc/ecf: All counsel of record.